Robert C. Schubert (S.B.N. 62684)
(rschubert@sjk.law)
Dustin L. Schubert (S.B.N. 254876)
(dschubert@sjk.law)
Amber L. Schubert (S.B.N. 278696)
(aschubert@sjk.law)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union St., Suite 200
San Francisco, California 94123
Telephone:      (415) 788-4220
Facsimile:      (415) 788-0161

*Counsel for Plaintiff Giovanni Carmassi*
*and the Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO / OAKLAND DIVISION

| | |
|---|---|
| GIOVANNI CARMASSI, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>COINBASE GLOBAL, INC. and COINBASE, INC.,<br><br>   Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

Upon personal knowledge as to their own acts, and based upon their investigation, the investigation of counsel, and information and belief as to all other matters, Plaintiff Giovanni Carmassi, on behalf of himself and all others similarly situated, alleges as follows:

## SUMMARY OF THE ACTION

1.    Plaintiff brings this class action against Coinbase, Inc. and Coinbase Global, Inc. (collectively, "Defendants" or "Coinbase") for their failure to adequately secure and safeguard his and at least 69,460 other individuals' personally identifying information ("PII") including names, addresses, masked Social Security numbers, masked bank account numbers, bank account identifiers, government identification images, account data, and limited corporate data.

2.    Defendant Coinbase, Inc. is the largest U.S. based cryptocurrency exchange, with a trading volume of $1.162 trillion, and over 3,700 employees.[1] Coinbase has eight million monthly transacting users. Coinbase had 110 million verified users as of the fourth quarter of 2022[2] and currently has eight million monthly transacting users.[3] Coinbase assures customers that "[p]rotecting your data and your privacy are a key priority for Coinbase."[4]

3.    On May 15, 2025, Coinbase publicly disclosed a Data Breach involving cybercriminals who "bribed and recruited a group of rogue overseas support agents to steal Coinbase

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

---

[1]    *See* Coinbase Global, Inc., Form 10-K (Feb. 13, 2025), *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/0001679788/000167978825000022/coin-20241231.htm (last accessed June 5, 2025).

[2] *See* Coinbase, WIKIPEDIA, https://en.wikipedia.org/wiki/Coinbase (last accessed June 5, 2025).

[3]    *See* Coinbase Usage and Trading Statistics (Jan. 30, 2025), *available at* https://backlinko.com/coinbase-users (last accessed June 5, 2025).

[4]    *See* Data Privacy at Coinbase, COINBASE, *available at* https://help.coinbase.com/en/coinbase/privacy-and-security/data-privacy/data-privacy-faq    (last accessed June 5, 2025).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

customer data to facilitate social engineering attacks."[5] The cybercriminals then demanded a $20 million ransom "in exchange for not publicly disclosing the information."[6]

4.      There are reports that Coinbase was alerted as early as January 2025 after an India-based employee of the outsourcing firm TaskUs was caught taking photos of her work computer with her personal phone. TaskUs fired two employees who improperly accessed and disseminated client information in exchange for bribes and immediately notified Coinbase.[7]

5.      Coinbase claims that "[t]hese instances of such personnel accessing data without business need were independently detected by the Company's security monitoring in the previous months." Upon discovery, the Company had immediately terminated the personnel involved and also implemented heightened fraud-monitoring protections and warned customers whose information was potentially accessed in order to prevent misuse of any compromised information."[8]

6.      Coinbase only disclosed the incident after it received a $20 million ransom demand on May 11, 2025.[9] Coinbase refused to pay the ransom and is "cooperating closely with law enforcement to pursue the harshest penalties possible."[10] Coinbase waited four days between receiving the extortion threat and notifying customers of the Data Breach.

7.      The Data Breach was directly and proximately caused by Defendants' failure to implement reasonable and industry-standard data security practices necessary to protect its systems

---

[5] *See* Protecting Our Customers – Standing Up to Extortionists, COINBASE, *available at* https://www.coinbase.com/blog/protecting-our-customers-standing-up-to-extortionists (last accessed June 5, 2025).

[6] Coinbase Global, Inc. Form 8-K (May 14, 2025), *available at* https://d18rn0p25nwr6d.cloudfront.net/CIK-0001679788/300c7bd0-d31d-4252-bf75-fa847ab81be1.pdf.

[7] *See* Raphael Satter, Coinbase breach linked to customer data leak in India, sources say (June 2, 2025), REUTERS, *available at* https://www.reuters.com/sustainability/boards-policy-regulation/coinbase-breach-linked-customer-data-leak-india-sources-say-2025-06-02/ (last accessed June 5, 2025).

[8] Coinbase Global, Inc. Form 8-K (May 14, 2025), *available at* https://d18rn0p25nwr6d.cloudfront.net/CIK-0001679788/300c7bd0-d31d-4252-bf75-fa847ab81be1.pdf

[9] *See* Satter, *supra* note 5; COINBASE, *supra* note 4.

[10] COINBASE, *supra* note 4.

---

Class Action Complaint                                                                                   2

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

from a foreseeable and preventable cyberattack. Through this wrongful conduct, the sensitive PII of thousands of individuals is now in the hands of cybercriminals, who target this sensitive data for its value to identity thieves. Plaintiff and Class Members are now at a significantly increased and impending risk of fraud, identity theft, and similar forms of criminal mischief—risks which may last the rest of their lives. Consequently, Plaintiff and Class Members must devote substantially more time, money, and energy to protect themselves, to the extent possible, from these crimes. Moreover, Plaintiff and Class Members have lost the inherent value of their private data.

8.      By aggregating information obtained from the Data Breach with other sources or other methods, criminals can assemble a full dossier of private information on an individual to facilitate a wide variety of frauds, thefts, and scams. Criminals can and do use victims' names and other personal information to open new financial accounts, incur credit charges, obtain government benefits and identifications, fabricate identities, and file fraudulent tax returns well before the person whose PII was stolen becomes aware of it. Any one of these instances of identity theft can have devastating consequences for the victim, causing years of often irreversible damage to their credit scores, financial stability, and personal security.

9.      Despite knowing of the Data Breach since January 2025, Defendants only began notifying impacted persons **nearly four months later**, on May 15, 2025, exacerbating the damages and risks to Class Members, and in violation of various state data breach notification statutes. The data breach notice letters also obscure the true nature of the cyberattack and threat it posed—failing to adequately inform Plaintiff and Class Members how many people were impacted, how the "cyber criminals" accessed Defendants' systems and the root cause of the Data Breach, whether the exfiltrated information was encrypted or anonymized, why it took so long to notify victims, or what specific remedial steps Defendants have taken to safeguard PII within their systems and networks (or otherwise purge unnecessary information) and to prevent further cyberattacks going forward. Without these critical details, Plaintiff and Class Members cannot meaningfully mitigate the resulting effects of the Data Breach.

10.      Coinbase stated that it "is continuing to review and bolster its anti-fraud protections to mitigate the risk that the compromised information could be used in social-engineering attempts.

To the extent any eligible retail customers previously sent funds to the threat actor as a direct result" of the Data Breach, Coinbase intends to "voluntarily reimburse them after it completes its review to confirm the facts."[11]

11.    Coinbase anticipates that the Data Breach will cost somewhere between "$180 million to $400 million relating to remediation costs and voluntary customer reimbursement relating to" the Data Breach.[12] However, Coinbase also cautions that "further review of potential losses, indemnification claims, and potential recoveries . . . could meaningfully increase or decrease this estimate."[13] Therefore, Coinbase is not yet apprised of the Data Breach's full potential impact on its operations and customers.

12.    Plaintiff is a Data Breach victim and received a notification of the Data Breach from Defendants on the Coinbase mobile application on June 3, 2025.

13.    As a result of Defendants' conduct and the resulting Data Breach, Plaintiff's and Class Members' privacy has been invaded, their PII is now in the hands of criminals, they have either suffered or will suffer fraud or identity theft, or face an imminent and ongoing risk of identity theft and fraud. Accordingly, these individuals now must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

14.    Plaintiff, on behalf of himself and all others similarly situated, herein alleges claims for negligence, breach of implied contract, unjust enrichment or quasi-contract, and violation of the California Customer Records Act, California Consumer Privacy Act of 2018, and California's Unfair Competition Law. Plaintiff on behalf of himself and the Class, seeks: (i) actual damages, economic damages, statutory damages, and nominal damages; (ii) punitive damages; (iii) fees and costs of litigation; (iv) injunctive relief, including the adoption of reasonably sufficient practices to safeguard PII in Defendants' custody, care, and control in order to prevent incidents like the Data Breach from

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

---

[11]    Coinbase Global, Inc. Form 8-K (May 14, 2025), available at https://d18rn0p25nwr6d.cloudfront.net/CIK-0001679788/300c7bd0-d31d-4252-bf75-fa847ab81be1.pdf (last accessed June 5, 2025).

[12] *Id.*

[13] *Id.*

recurring in the future and for Defendants to provide long-term identity theft protective services to Plaintiff and Class Members; and (v) such other relief as the Court deems just and proper.

<strong><u>PARTIES</u></strong>

**A.**     <u>**Plaintiffs**</u>

15.    Plaintiff Giovanni Carmassi is a resident and citizen of California.

**B.**     <u>**Defendant**</u>

16.    Defendant Coinbase Global, Inc. is a Delaware corporation with its principal place of business located in One Madison Avenue Suite 2400, New York, New York 10010.

17.    Defendant Coinbase, Inc. is a wholly owned subsidiary of Coinbase Global, Inc. and operates the Coinbase platform. According to the Email Notice, Coinbase, Inc. has a physical location in Oakland, CA.

<strong><u>JURISDICTION AND VENUE</u></strong>

18.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because at least one member of the putative Class, as defined below, is a citizen of a state other than that of Defendants, there are more than 100 putative Class Members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

19.    This Court has general personal jurisdiction over Coinbase because it maintains its principal place of business in Oakland, California and regularly conducts business in California, and has sufficient minimum contacts in California, such as to not offend traditional notions of fair play and substantial justice.

20.    Venue in this District is proper under 28 U.S.C. § 1391 because Coinbase resides in this District and a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, including Defendants collecting or storing the PII of Plaintiff and the putative Class Members.

21.    Divisional Assignment: This action arises in Alameda County, in that a substantial part of the events which give rise to the claims asserted herein occurred in Alameda County, where

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

Coinbase is headquartered and located. Pursuant to L.R. 3-2(d), all civil actions that arise in Alameda County shall be assigned to the San Francisco or Oakland Division.

## **FACTUAL BACKGROUND**

A.      **Coinbase Collects, Stores, and Maintains Personally Identifiable Information**

22.      Coinbase was founded in 2012.[14] Coinbase purports to be "updating the century-old financial system by providing a trusted platform that makes it easy for people and institutions to engage with crypto assets, including trading, staking, safekeeping, spending, and fast, free, global transfers."[15]

23.      To utilize Coinbase's cryptocurrency services, customers like Plaintiff must provide Defendant directly with highly sensitive and private information. Defendants claim to be "the most trusted and secure place for people and business to buy, sell, and manage crypto."[16]

24.      Coinbase understands that data cybersecurity is critical. Defendants claim to "respect and protect the privacy of those who explore our Services . . . and Users who sign up for and access our Services[.]"[17] Coinbase claims that "it is in our interest and the interests of our Users and Customers to secure our platform and network, to verify accounts and activity, to combat harmful conduct, to detect, prevent and address fraud, abuse, spam and other bad experiences."[18] Coinbase further admits that "[o]ur Services are subject to laws and regulations requiring us to collect, use, and store your personal information in certain ways."[19] Coinbase also assures its users that basic customer information, supplemental identification information and electronic identification information are "securely maintained by Coinbase and its service providers, and is only disclosed where permitted by law."[20]

---

[14] *See* Coinbase, WIKIPEDIA, https://en.wikipedia.org/wiki/Coinbase (last accessed June 5, 2025).

[15] https://www.coinbase.com/about (last accessed June 5, 2025).

[16] https://www.coinbase.com (last accessed June 5, 2025).

[17] Coinbase Global Privacy Policy, COINBASE (Mar. 26, 2024) https://www.coinbase.com/legal/privacy (last accessed June 5, 2025).

[18] *Id.*

[19] *Id.*

[20] *Id.*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

25.     Despite these strong proclaimed proactive policies and approaches to data security and privacy for their customers, Defendants failed to adequately secure and safeguard its systems and networks from a foreseeable and preventable cyberattack. This conduct proximately resulted in the Data Breach and significant harm to Plaintiff and the Class.

**B.    The Data Breach Exposed Valuable PII**

26.     Defendants collected and maintained Plaintiff's and the Class's PII in their computer systems, servers, and networks. In accepting, collecting, and maintaining Plaintiff's and the Class's PII, Defendants agreed that they would protect and safeguard that data by complying with state and federal laws and regulations and applicable industry standards. Defendants were in possession of Plaintiff's and the Class's PII before, during, and after the Data Breach.

27.     On May 15, 2025, Coinbase publicly announced that "[c]riminals targeted our customer support agents overseas. They used cash offers to convince a small group of insiders to copy data in our customer support tools for less than 1% of Coinbase monthly transacting users. Their aim was to gather a customer list they could contact while pretending to be Coinbase—tricking people into handing over their crypto."[21]

28.     By Coinbase's own admission in its SEC Form 8-K filed May 14, 2025, and based on emerging media reports, Coinbase knew of the Data Breach since January 2025.

29.     In January 2025, an India-based employee of the outsourcing firm TaskUs was caught taking photographs of her work computer with her personal phone.[22] At least five former TaskUs

---

[21] COINBASE, *supra* note 4.

[22] Satter, *supra* note 5.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

employees have confirmed this to media outlet Reuters.[23] However, there are varying reports of whether the employee took the unauthorized photos in December 2024, or January 2025.[24]

30.    TaskUs confirmed that two employees were fired earlier in 2025 after they illegally accessed information from a client.[25] TaskUs said that they "immediately reported this activity to the client" and "believe that these two individuals were recruited by a much broader, coordinated criminal campaign against this client that also impacted a number of other providers servicing this client."[26] Another source confirmed that Coinbase was the client in question and that the employees were fired in January.[27]

31.    Coinbase claims on their Form 8-K filed on May 14, 2025, that they received a ransom demand on May 11, 2025, but that the "instances of such personnel accessing data without business need were independently detected by [Coinbase, Inc.'s] security monitoring in the previous months."[28]

32.    Coinbase knew of the threat since January 2025, and of the extortion demand since May 11, 2025, which were, respectively, four months and four days before customers were notified of the Data Breach.

33.    Despite Defendants' duties and commitments to safeguard sensitive and private information, Defendants failed to follow industry-standard practices in securing Plaintiff's and the Class Members' PII, as evidenced by the Data Breach.

---

[23] *Id.*

[24] *Id.* (alleging misconduct occurred in January 2025); *but see* Crypto's weakest link? Coinbase hacked by its own support team, INFORMATION SECURITY NEWSPAPER, https://www.securitynewspaper.com/2025/06/05/cryptos-weakest-link-coinbase-hacked-by-its-own-support-team/ (alleging data breach occurred in December 2024) (last accessed June 5, 2025).

[25] Satter, *supra* note 5.

[26] *Id.*

[27] *Id.*

[28] Coinbase Global, Inc. Form 8-K (May 14, 2025), *available at* https://d18rn0p25nwr6d.cloudfront.net/CIK-0001679788/300c7bd0-d31d-4252-bf75-fa847ab81be1.pdf (last accessed June 5, 2025).

34.    In response to the Data Breach, Defendants contend that they "investigated the incident, reinforced our controls, and will reimburse customers impacted by this incident."[29] They further claim that they "have increased our investment in insider-threat detection, automated response, and simulating similar security threats to find failure points in any internal system."[30] Although Defendants failed to expand on their controls or insider-threat detection protocols, such policies and practices clearly should have been in place and fully operational *before* the Data Breach.

35.    As of May 30, 2025, Defendants reported to the Maine Attorney General's Office that the number of persons impacted in the Data Breach was 69,461. [31]

36.    Defendants' Data Breach blog post reveals that the following information for Plaintiff and the Class was stolen in the Data Breach: names, addresses, phone numbers, email addresses, masked Social Security data, masked bank-account numbers and bank account identifiers, government identification images, account data, and limited corporate data including documents, training material, and communications.[32]

37.    Through its Data Breach notice letters to Plaintiff and Class Members, Defendants also recognized the actual imminent harm and injury that flowed from the Data Breach by encouraging them to turn on withdrawal allow-listing, enable strong two-factor authentication, hang up on imposters, lock accounts if confronted with suspicious activity, and review security tips on avoiding social engineering scams.[33]

38.    Defendants are still assessing the full financial impact of the Data Breach but estimate expenses to be between $180 million and $400 million relating to remediation costs and voluntary

---

[29] COINBASE, *supra* note 4.

[30] *Id.*

[31] *See* Office of the Maine Attorney General, Data Breach Notification, *available at* https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/f61fae18-f669-499e-9a87-f4d323d281f8.html (last accessed June 5, 2025).

[32] COINBASE, *supra* note 4.

[33] *See id.*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

customer reimbursements.[34] They further acknowledge that "review of potential losses, indemnification claims, and potential recoveries. . .could meaningfully increase or decrease this estimate."[35]

39.    *TechCrunch* founder and venture capitalist Michael Arrington  expressed concern on the social media platform X about the compromise of "home addresses and account balances" in the Data Breach and further speculated that "[t]he human cost, denominated in misery, is much larger than the $400 million or so they think it will actually cost the company to reimburse people."[36]

40.    As of June 5, 2025, it was reported that fraudulent physical letters are being mailed out as a result of the Data Breach.[37] Fraudulent activity resulting from the Data Breach may not come to light for years. Thus, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' PII remain very high.

## C.    Defendants Had Ample Notice That They Were a Likely Cyberattack Target

41.    At all relevant times, Defendants knew, or should have known, that the PII they were entrusted with was a target for malicious actors. Defendants knew this given the unique type and the significant volume of data on their networks, servers, and systems, comprising individuals' detailed and confidential personal information and, thus, the significant number of individuals who the exposure of the PII would harm.

42.    As custodian of Plaintiff's and Class Members' PII, Defendants knew or should have known the importance of protecting their PII, and of the foreseeable consequences and harms to such persons if any data breach occurred.

---

[34] Coinbase Global, Inc. Form 8-K (May 14, 2025), *available at* https://d18rn0p25nwr6d.cloudfront.net/CIK-0001679788/300c7bd0-d31d-4252-bf75-fa847ab81be1.pdf (last accessed June 5, 2025).

[35] *Id.*

[36] Ryan S. Gladwin, Coinbase Data Breach Will 'Lead to People Dying,' TechCrunch Founder Says, DECRYPT,    https://decrypt.co/321076/coinbase-data-breach-will-lead-to-people-dying-techcrunch-founder-says (last accessed June 5, 2025).

[37] Assad Jafri, Coinbase data breach spills offline as victims get scam mail, CRYPTOSLATE, https://cryptoslate.com/coinbase-data-breach-spills-offline-as-victims-get-scam-mail/ (last accessed June 5, 2025).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

43.    According to the Consumer Financial Protection Bureau, the number of data breach and identity theft complaints it received grew from 14,319 in 2020 to 32,469 in 2022.[38] It is well known among companies that PII such as social security numbers and financial information is valuable and frequently targeted by criminals.

44.    The Federal Trade Commission has warned consumers that identity thieves use PII to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[39]

45.    Criminals can commit all types of fraud, including: obtaining a driver's license or official identification card in the victim's name but the thief's picture, using the victim's name and SSN to obtain government benefits, to obtain lending or lines of credit, filing a fraudulent tax return using the victim's information. Identity thieves may obtain a job using the victim's social security number, rent a house, or give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[40]

46.    Defendants' security obligations were especially important due to the substantial increase of cyberattacks and data breaches in recent years.

**D.    Defendants Breached Their Duties to Plaintiff and Class Members, and Failed to Comply with Regulatory Requirements and Industry Practices.**

47.    Because Defendants were entrusted with PII at all times herein relevant, Defendants owed to Plaintiff and the Class a duty to exercise commercially reasonable methods and care in handling, using, maintaining, storing, and safeguarding the PII in their care, control, and custody, including by implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that occurred, and to promptly detect and thwart attempts at unauthorized access to their networks and systems. Defendants also owed a

[38] *See Compromised: Why experts say data breaches are on the rise,* NBC 6 SOUTH FLORIDA, https://www.nbcmiami.com/responds/compromised-why-experts-say-data-breaches-are-on-the-rise/3473306/ (last accessed June 5, 2025).

[39] *See* What to Know About Identity Theft, FEDERAL TRADE COMMISSION (Sept. 2024), https://consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed June 5, 2025).

[40] *See* Warning Signs of Identity Theft, FEDERAL TRADE COMMISSION, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed June 5, 2025).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

duty to safeguard PII because they were on notice that they were handling highly valuable data and knew there was a significant risk it would be targeted by cybercriminals. Furthermore, Defendants knew of the extensive, foreseeable harm that would ensue for the victims of a data breach, and therefore also owed a duty to reasonably safeguard that information.

48.    Security standards commonly accepted among businesses like Defendants that store PII include, without limitation:

        i.    Maintaining a secure firewall configuration;

        ii.    Monitoring for suspicious or irregular traffic to servers or networks;

        iii.    Monitoring for suspicious credentials used to access servers or networks;

        iv.    Monitoring for suspicious or irregular activity by known users;

        v.    Monitoring for suspicious or unknown users;

        vi.    Monitoring for suspicious or irregular server requests;

        vii.    Monitoring for server requests for PII;

        viii.    Monitoring for server requests from VPNs; and

        ix.    Monitoring for server requests for Tor exit nodes.

49.    The U.S. Federal Trade Commission ("FTC") publishes guides for businesses for cybersecurity[41] and protection of PII which includes basic security standards applicable to all types of businesses.[42]

50.    The FTC recommends that businesses:

        i.    Identify all connections to the computers where sensitive information is stored.

        ii.    Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

---

[41] Start with Security: A Guide for Business, FTC (June 2015), *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[42] Protecting Personal Information: A Guide for Business, FTC (Oct. 2016), *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

iii.     Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

iv.     Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

v.     Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hacker attacks.

vi.     Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

vii.     Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

viii.     Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

ix.     Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business's network, the transmission should be investigated to make sure it is authorized.

51.     As described further below, Defendants owed a duty to safeguard PII under the Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTC Act") to ensure that all information they

received, maintained, and stored was secure. This statute was enacted to protect Plaintiff and the Class Members from the type of conduct in which Defendants engaged, and the resulting harms Defendants proximately caused Plaintiff and the Class Members.

52.     Under the FTC Act, Defendants had a duty to provide fair and adequate computer systems and data security practices to safeguard the PII of Plaintiff and Class Members.

53.     Defendants breached their duty to exercise reasonable care in protecting Plaintiff's and Class Members' PII by failing to implement and maintain adequate data security measures to safeguard Plaintiff's and Class Members' sensitive personal information, failing to encrypt or anonymize PII within their systems and networks, failing to monitor their systems and networks to promptly identify and thwart suspicious activity, allowing unmonitored and unrestricted access to unsecured PII, and allowing (or failing to prevent) unauthorized access to, and exfiltration of, Plaintiff's and Class Members' confidential and private information. Additionally, Defendants breached their duty by utilizing outdated and ineffectual data security measures which deviated from standard industry best practices at the time of the Data Breach. Through these actions, Defendants also violated their duties under the FTC Act.

54.     Defendants failed to prevent the Data Breach. Had Defendants properly maintained and adequately protected their systems, servers, and networks, the Data Breach would not have occurred.

55.     Additionally, the law imposes an affirmative duty on Defendants to timely disclose the unauthorized access and theft of PII to Plaintiff and Class Members so that they can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuses of their private information. Defendants further breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members. In so doing, Defendants actually and proximately caused and exacerbated the harm from the Data Breach and the injuries-in-fact of Plaintiff and Class Members.

### E.     The Experiences of Plaintiff Carmassi

56.     Plaintiff has been a Coinbase customer since May 1, 2021.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

57. Plaintiff received notice of the Data Breach on June 3, 2025, when he logged into Coinbase's mobile application and saw a popup notification about the Data Breach.

58. As a proximate result of the Data Breach, Plaintiff will spend time for the foreseeable future and beyond dealing with its consequences and self-monitoring his accounts and credit reports to monitor potentially suspicious and fraudulent activity. This time will be lost forever and cannot be recaptured. Following the Data Breach, Plaintiff has already experienced suspicious activity on his Coinbase account in June 2025 wherein he got a text message notification that an unauthorized individual was attempting to access his account.

59. Plaintiff has and is experiencing fear, stress, and frustration because his sensitive information was stolen in the Data Breach, and not knowing by whom or for what purpose. This goes beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that the law contemplates and addresses.

60. Plaintiff suffered actual injuries in the form of damages to and diminution in the value of his PII—a form of intangible property was entrusted to Defendants, which was compromised in and as a proximate result of the Data Breach.

61. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse proximately resulting from his PII being obtained by unauthorized third parties and possibly cybercriminals.

62. Plaintiff has a continuing interest in ensuring that his PII, which remains within Defendants' possession and control, is protected and safeguarded against future data breaches or cybersecurity risks.

63. Defendants deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's harmful effects by failing to promptly notify him about it. Instead, ***Defendants waited almost four months***, without any explanation whatsoever.

### F. <u>Plaintiff and the Class Suffered Actual and Impending Injuries Resulting From the Data Breach</u>

64. As a proximate result of Defendants' completely unreasonable security practices, identity thieves now possess the sensitive PII of Plaintiff and the Class. That information is

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

extraordinarily valuable on the black market and incurs direct costs to Plaintiff and the Class. On the dark web—an underground Internet black market—criminals openly buy and sell stolen PII to create "identity kits" worth up to $2,000 each that can be used to create fake IDs, gain access to bank accounts, social media accounts, and credit cards, file false insurance claims or tax returns, or rack up other kinds of expenses.[43] And, "[t]he damage to affected [persons] may never be undone."[44]

65.     Unlike the simple credit-card breaches at retail merchants, these damages cannot be avoided by canceling and reissuing plastic cards or closing an account. Identity theft is far more pernicious than credit card fraud. Criminals' ability to open entirely new accounts—not simply prey on existing ones—poses far more dangerous problems. Identity thieves can retain the stolen information for years until the controversy has receded because victims may become less vigilant in monitoring their accounts as time passes. Then, at any moment, the thief can take control of a victim's identity, resulting in thousands of dollars in losses and lost productivity. The U.S. Department of Justice has reported that in 2021, identity theft victims spent on average about four hours to resolve problems stemming therefrom and that the average financial loss experienced by an identity theft victim was $1,160 per person.[45] Additionally, about 80% of identity theft victims reported some form of emotional distress resulting from the incident.[46]

66.     As a consequence of the Data Breach, Class Members' credit profiles can be destroyed before they even realize what happened, and they may be unable to legitimately borrow money, obtain credit, or open bank accounts. Class Members can be deprived of legitimate tax refunds or, worse yet, may face state or federal tax investigations due to fraud committed by an identity thief. And even the simple preventive step of adding oneself to a credit-fraud watch list to

---

[43] Nick Culbertson, *Increased Cyberattacks on Healthcare Institutions Shows the Need for Greater Cybersecurity* (Jun. 7, 2021), FORBES, https://www.forbes.com/sites/forbestechcouncil/2021/06/07/increased-cyberattacks-on-healthcare-institutions-shows-the-need-for-greater-cybersecurity/?sh=ca928c05650d.

[44] *Id.*

[45] Erika Harrell and Alexandra Thompson, Victims of Identity Theft, 2021, U.S. DEPARTMENT OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, BUREAU OF JUSTICE STATISTICS (Oct. 2023), *available at* https://bjs.ojp.gov/document/vit21.pdf.

[46] *Id.*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

1  guard against these consequences substantially impairs Class Members' ability to obtain additional

2  credit. In fact, many experts advise victims to place a freeze on all credit accounts, making it

3  impossible to rent a car, get student loans, buy or rent big-ticket items, or complete a major new car

4  or home purchase.

5  **CLASS ACTION ALLEGATIONS**

6  67.    Pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3), and where applicable,

7  23(c)(4), Plaintiff seeks certification of the following Nationwide Class and California Subclass

8  (collectively, the "Class"):

9       **Nationwide Class:** All persons in the United States whose PII was exposed
10      to unauthorized third parties as a result of the data breach discovered by
        Defendants on May 2025, including all persons who were sent a notice that
11      their personal information was compromised as a result of the Data Breach
        (and each person a "Class Member").

12      **California Class:** All persons in the State of California whose PII was
13      exposed to unauthorized third parties as a result of the data breach
        discovered by Defendants on May 2025, including all persons who were
14      sent a notice that their personal information was compromised as a result of
        the Data Breach (and each person a "Class Member").

15

16  68.    Excluded from the Class are governmental entities, Defendants, any entity in which

17  Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal

18  representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded

19  from the Class are any judges, justices, or judicial officers presiding over this matter and the

20  members of their immediate families and judicial staff.

21  69.    This action is brought and may be properly maintained as a class action pursuant to

22  Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and 23(b)(3), and satisfies the numerosity, commonality,

23  typicality, adequacy, predominance, and superiority requirements of these rules.

24  70.    *Numerosity Under Rule 23(a)(1)*. The Class is so numerous that the individual joinder

25  of all members is impracticable, and the disposition of the claims of all members of the Class in a

26  single action will provide substantial benefits to the parties and the Court. Upon information and

27  belief, Plaintiff estimates that the Class is comprised of thousands of Class Members. The Class is

28  sufficiently numerous to warrant certification.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

71.    _Commonality Under Rule 23(a)(2)_. Common legal and factual questions exist that predominate over any questions affecting only individual members of the Class. These common questions, which do not vary among members of the Class and which may be determined without reference to any Class Member's individual circumstances, include, but are not limited to:

a.    Whether Defendants knew or should have known that their computer systems and networks were vulnerable to unauthorized third-party access or a cyberattack;

b.    Whether Defendants failed to utilize and maintain adequate and reasonable security and preventive measures to ensure that their computer systems and networks were protected;

c.    Whether Defendants failed to take available steps to prevent and stop the Data Breach from occurring;

d.    Whether Defendants failed to comply with its own policies and applicable laws, regulations and industry standards relating to data security;

e.    Whether Defendants owed a legal duty to Plaintiff and Class Members to protect their PII;

f.    Whether Defendants breached any duty to protect the PII of Plaintiff and Class Members by failing to exercise due care in protecting their sensitive and private information;

g.    Whether Defendants' conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the PII of Plaintiff and Class Members.

h.    Whether Defendants provided timely, accurate, and sufficient notice of the Data Breach to Plaintiff and the Class Members;

i.    Whether Plaintiff and Class Members have been damaged by the wrongs alleged and are entitled to actual, statutory, or other forms of damages and other monetary relief; and

j.    Whether Plaintiff and Class Members are entitled to injunctive or equitable relief, including restitution.

72.    _Typicality Under Rule 23(a)(3)_. Plaintiff's claims are typical of the claims of the Class. Plaintiff had his PII compromised in the Data Breach. Defendants' uniformly unlawful course of conduct injured Plaintiff and Class Members.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

73.    _Adequacy of Representation Under Rule 23(a)(4)_. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class. Plaintiff has retained counsel competent and experienced in complex litigation and consumer protection class action matters such as this action, and Plaintiff and his counsel intend to vigorously prosecute this action for the Class's benefit and have the resources to do so. Plaintiff and his counsel have no interests adverse to those of the other members of the Class.

74.    _Predominance and Superiority_. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because individual litigation of each Class Member's claim is impracticable. The damages, harm, and losses suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct. Even if each Class Member could afford individual litigation, the Court system could not. It would be unduly burdensome if tens of thousands of individual cases or more proceeded. Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those individuals with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the Courts because it requires individual resolution of common legal and factual questions. By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

75.    As a result of the foregoing, class treatment under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), and (c)(4) is appropriate.

## FIRST CAUSE OF ACTION
### Negligence
### _(On Behalf of the Nationwide Class)_

76.    Plaintiff incorporates the above allegations as if fully set forth herein.

77.    Because Defendants were entrusted with such PII at all times herein relevant, they owed to Plaintiff and the Class a duty to exercise commercially reasonable methods and care in handling, using, maintaining, storing, and safeguarding the PII in its care, control, and custody, including by implementing industry-standard security procedures sufficient to reasonably protect the

1   information from the Data Breach, theft, and unauthorized use that occurred, and to promptly detect

2   and thwart attempts at unauthorized access to their networks and systems. This duty arose

3   independently from any contract.

4       78.    Defendants knew, or should have known, of the risks inherent in collecting and

5   storing massive amounts of PII, including the importance of adequate data security and the high

6   frequency of ransomware attacks and well-publicized data breaches. Defendants owed a duty of care

7   to Plaintiff and Class Members because it was foreseeable that Defendants' failure to adequately

8   safeguard their PII in accordance with state-of-the-art industry standards concerning data security

9   would result in the compromise of that sensitive information. Indeed, on its website and filings with

10  the SEC, Coinbase commits to data privacy, including safeguarding PII.

11      79.    Defendants acted with wanton and reckless disregard for the security and

12  confidentiality of Plaintiff's and the Class's PII failing to limit access to this information to

13  unauthorized third parties and by not properly supervising both the way the PII was stored, used,

14  and exchanged, and those in Coinbase's employ responsible for such tasks.

15      80.    Defendants owed to Plaintiff and members of the Class a duty to notify them within

16  a reasonable timeframe of any breach to the security of their PII. Defendants also owed a duty to

17  timely and accurately disclose to Plaintiff and Class Members the scope, nature, and circumstances

18  of the Data Breach. This duty is required and necessary for Plaintiff and the Class to take appropriate

19  measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other

20  necessary steps to mitigate the harm caused by the Data Breach.

21      81.    Defendants also had a common law duty to prevent foreseeable harm to others.

22  Defendants had full knowledge of the sensitivity and high value of the PII that they stored and the

23  types of foreseeable harm and injury-in-fact that Plaintiff and Class Members could and would suffer

24  if that PII were wrongfully disclosed, leaked, accessed, or exfiltrated. Defendants' conduct created

25  a foreseeable and unreasonable risk of harm to Plaintiff and Class Members, who were the

26  foreseeable victims of Defendants' inadequate data security practices.

27      82.    Defendants violated their duty to implement and maintain reasonable security

28  procedures and practices, including through its failure to adequately restrict access to its systems

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

that held millions of individuals' PII or encrypt or anonymize such data. Defendants' duty included, among other things, designing, maintaining, and testing their information security controls to ensure that PII in their possession was adequately secured by, for example, encrypting or anonymizing sensitive personal information, installing intrusion detection and deterrent systems and monitoring mechanisms, and using access controls to limit access to sensitive data.

83.    Defendants' duty of care also arose pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act"), under which Defendants had a duty to provide fair and adequate computer systems and data security practices to safeguard the PII of Plaintiff and Class Members.

84.    The FTC Act was enacted to protect Plaintiff and the Class Members from the type of wrongful conduct in which Defendants engaged.

85.    Defendants' violation of the FTC Act constitutes negligence per se for purposes of establishing the duty and breach elements of Plaintiff's negligence claim. Those statutes were designed to protect a group to which Plaintiff belongs and to prevent the types of harm that resulted from the Data Breach.

86.    Defendants breached their duty to exercise reasonable care in protecting Plaintiff's and Class Members' PII by failing to implement and maintain adequate data security measures to safeguard Plaintiff's and Class Members' sensitive personal information, failing to encrypt or anonymize PII within their systems and networks, failing to monitor their systems and networks to promptly identify and thwart suspicious activity, failing to delete and purge PII no longer necessary for its provision of services to their clients and customers, allowing unmonitored and unrestricted access to unsecured PII, and allowing (or failing to prevent) unauthorized access to, and exfiltration of, Plaintiff's and Class Members' confidential and private information. Additionally, Defendants breached their duty by utilizing outdated and ineffectual data security measures which deviated from standard industry best practices at the time of the Data Breach. Through these actions, Defendants also violated their duties under the FTC Act.

87.    The law imposes an affirmative duty on Defendants to timely disclose the unauthorized access and theft of PII to Plaintiff and Class Members so that they can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuses of

their private information. Defendants further breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members. In so doing, Defendants actually and proximately caused and exacerbated the harm from the Data Breach and the injuries-in-fact of Plaintiff and Class Members. Timely disclosure was necessary so that Plaintiff and Class Members could, among other things: (i) purchase identity theft protection, monitoring, and recovery services; (ii) flag asset, credit, and tax accounts for fraud; (iii) purchase or otherwise obtain credit reports; (iv) place or renew fraud alerts on a quarterly basis; (v) closely monitor loan data and public records; and (vi) take other meaningful steps to protect themselves and attempt to avoid or recover from identity theft and other harms.

88.     As recently as May 2025, Coinbase was valued at $86 billion and earned approximately $6.564 billion in revenue in 2024, and accordingly had the financial and personnel resources necessary to prevent the Data Breach. Defendants nevertheless failed to adopt reasonable data security measures, in breach of the duties they owed to Plaintiff and Class Members.

89.     Plaintiff and Class Members had no ability to protect their PII once it was in Defendants' possession and control. Defendants were in an exclusive position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

90.     But for Defendants' breach of duty to adequately protect Class Members' PII, Class Members' PII would not have been stolen. As a result of Defendants' negligence, Plaintiff and Class Members suffered and will continue to suffer the various types of damages alleged herein. There is a temporal and close causal connection between Defendants' failure to implement adequate data security measures, the Data Breach, and the harms suffered by Plaintiff and Class Members.

91.     As a direct and traceable result of Defendants' negligence, Plaintiff and the Class have suffered or will suffer an increased and impending risk of fraud, identity theft, damages, embarrassment, humiliation, frustration, emotional distress, and lost time and out-of-pocket costs to mitigate and remediate the effects of the Data Breach. These harms to Plaintiff and the Class include, without limitation: (i) loss of the opportunity to control how their personal information is used; (ii) diminution in the value and use of their personal information entrusted to Defendants; (iii) the compromise and theft of their personal information; (iv) out-of-pocket costs associated with the

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

prevention, detection, and recovery from identity theft and unauthorized use of financial accounts; (v) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including increased costs to use credit, credit scores, credit reports, and assets; (vi) unauthorized use of compromised personal information to open new financial and other accounts; (vii) continued risk to their personal information, which remains in Defendants' possession and is subject to further breaches so long as Defendants fail to undertake appropriate and adequate measures to protect the personal information in their possession; and (viii) future costs in the form of time, effort, and money they will expend to prevent, detect, contest, and repair the adverse effects of their personal information being stolen in the Data Breach.

92.    Defendants' negligence was gross, willful, wanton, and warrants the imposition of punitive damages given the clear foreseeability of a hacking incident, the extreme sensitivity of the private information under Defendants' care, and their failure to take adequate remedial steps, including prompt notification of the victims, following the Data Breach.

93.    Plaintiff and Class Members are entitled to all forms of monetary compensation set forth herein, including monetary payments to provide adequate long-term identity protection services. Plaintiff and Class Members are also entitled to the injunctive relief sought herein.

## SECOND CAUSE OF ACTION
### Breach of Implied Contract
### *(On Behalf of the Nationwide Class)*

94.    Plaintiff incorporates the above allegations as if fully set forth herein.

95.    Through their course of conduct, Plaintiff and the Class Members entered into implied contracts with Defendants under which Defendants agreed to safeguard and protect their confidential and private PII and to timely and accurately notify Plaintiff and Class Members if their information had been breached and compromised.

96.    Defendants acquired, stored, and maintained the PII of Plaintiff and the Class.

97.    Plaintiff and Class Members were required to provide, or authorize the transfer of, their private information in order for Defendants to provide their services.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

98.     Defendants solicited, offered, and invited Class Members to provide their private information as part of their regular business practices. Plaintiff and Class Members accepted Defendants' offer and provided their private information to Defendants.

99.     When Plaintiff and Class Members provided their PII to Defendants, they entered into implied contracts with Defendants and intended and understood that PII would be adequately safeguarded as part of that service.

100.    Defendants' implied promise of confidentiality to Plaintiff and Class Members includes consideration beyond those pre-existing general duties owed under the FTC Act, or other state or federal regulations. The additional consideration included implied promises to take adequate steps to comply with specific industry data security standards and FTC guidelines on data security.

101.    Defendants' implied promises include but are not limited to: (a) taking steps to ensure that any agents who are granted access to PII also protect the confidentiality of that data; (b) restricting access to qualified and trained agents; (c) designing and implementing appropriate retention policies to protect the information against criminal data breaches; (d) applying or requiring proper encryption; (e) multifactor authentication for access; (f) protecting Plaintiff's and Class Members' PII in compliance with federal and state laws and regulations and industry standards; and (g) other steps to protect against foreseeable data breaches.

102.    Defendants' implied promises to safeguard Plaintiff's and Class Members' PII are evidenced by representations in Defendant's Privacy Policy and SEC filings. The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendants on the other, is further demonstrated by their conduct and course of dealing.

103.    Plaintiff and the Class Members would not have entrusted their PII to Defendants in the absence of such an implied contract. Had Defendants disclosed to Plaintiff and the Class that they did not have adequate computer systems and security practices to secure sensitive data, Plaintiff and the other Class Members would not have provided their PII to Defendants.

104.    Defendants recognized that Plaintiff's and Class Members' PII is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and the other Class Members.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

105.    Plaintiff and the Class Members fully and adequately performed their obligations under the implied contracts with Defendants.

106.    Defendants breached the implied contracts they made with Plaintiff and the Class Members by failing to take reasonable measures to safeguard their PII as described herein, as well as by failing to provide accurate, adequate, and timely notice to them that their PII was compromised as a result of the Data Breach.

107.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other Class Members suffered and will continue to suffer damages from: (i) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm, (iii) the loss of the confidentiality of the stolen PII, (iv) the illegal sale of the compromised data on the dark web, (v) lost work time, and (vi) other economic and non-economic harms.

108.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to strengthen their data security systems, submit to future audits of those systems, and provide adequate long-term credit monitoring and identity theft protection services to all persons affected by the Data Breach.

### THIRD CAUSE OF ACTION
### Unjust Enrichment / Quasi-Contract
### *(On Behalf of the Nationwide Class)*

109.    Plaintiff incorporates the above allegations as if set fully set forth herein.

110.    This claim is pled in the alternative to the breach of implied contract claim.

111.    A monetary benefit was directly and indirectly conferred upon Defendants through their receipt of Plaintiff's and Class Members' PII, which Defendants used to facilitate the provision of services. Defendants appreciated or had knowledge of these benefits conferred upon them by Plaintiff and the Class.

112.    Upon information and belief, Defendants fund their data security measures entirely from general revenue, including payments made by or on behalf of Plaintiff and Class Members.

113.    Defendants enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII to prevent the Data

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

Breach. Defendants instead increased their own profits by implementing cheaper, ineffective security measures at the expense of Plaintiff and Class Members.

114.    Under principles of equity and good conscience, Defendants should not be permitted to retain the full monetary value of the benefits because they failed to adequately protect Plaintiff's and Class Members' PII.

115.    If Plaintiff and Class Members knew that Defendants had not reasonably secured their PII, they would not have agreed to provide their PII to Defendants.

116.    Plaintiff and the Class Members have no adequate remedy at law. Defendants continue to retain their PII while exposing this sensitive and private information to a risk of future data breaches while in Defendants' possession. Defendants also continue to derive a financial benefit from using Plaintiff's and Class Members' PII.

117.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class Members have suffered various types of damages alleged herein.

118.    Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by them because of their misconduct described herein and the Data Breach.

### **FOURTH CAUSE OF ACTION**
**Injunctive/Declaratory Relief**
***(On Behalf of the Nationwide Class)***

119.    Plaintiff incorporates the above allegations as if fully set forth herein.

120.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal and state statutes described herein.

121.    Defendants owe a duty of care to Plaintiff and Class Members, which required Defendants to adequately monitor and safeguard Plaintiff's and Class Members' PII.

122.    Defendants and their officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns still possess the PII belonging to Plaintiff and Class Members.

123.     An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class Members' PII and whether Defendants are currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their PII. Plaintiff alleges that Defendants' data security measures remain inadequate. Furthermore, Plaintiff and the Class continue to suffer injury as a result of the compromise of their PII and the risk remains that further compromises of their private information will occur in the future.

124.     Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.   Defendants owe a legal duty to adequately secure the PII of Plaintiff and the Class within their care, custody, and control under the common law, and Section 5 of FTC Act;

b.   Defendants breached their duty to Plaintiff and the Class by allowing the Data Breach to occur;

c.   Defendants' existing data monitoring measures do not comply with their obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect the PII of Plaintiff and the Class within Defendants' custody, care, and control; and

d.   Defendants' ongoing breaches of said duties continue to cause harm to Plaintiff and the Class.

125.     If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach or cybersecurity incident. This risk is real, immediate, and substantial. If another data breach or cybersecurity incident occurs, Plaintiff and the Class will not have an adequate remedy at law because monetary relief alone will not compensate Plaintiff and the Class for the serious risks of future harm.

126.     The hardship to Plaintiff and the Class if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Plaintiff and the Class will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of Defendants' compliance with an injunction requiring reasonable prospective

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

data security measures is relatively minimal, and Defendants have a pre-existing legal obligation to employ such measures.

127.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach or cybersecurity incident, thus preventing future injury to Plaintiff and the Class and other persons whose PII would be further compromised.

### FIFTH CAUSE OF ACTION
**Violation of the California Customer Records Act**
**Cal. Civ. Code §§ 1798.80 *et seq.* ("CCRA")**
***(On Behalf of Plaintiff and the California Subclass)***

128.    Plaintiff, individually and on behalf of the California Subclass, incorporates by reference each of the factual allegations contained in the preceding paragraphs as if fully set forth herein.

129.    "[T]o ensure that personal information about California residents is protected," the California legislature enacted Cal. Civ. Code § 1798.81.5, which requires that any business that "owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

130.    Coinbase is a business that owns, maintains, or licenses personal information, within the meaning of Cal. Civ. Code § 1798.81.5, about Plaintiff and California Subclass members.

131.    Defendants violated Cal. Civ. Code § 1798.81.5 by failing to implement reasonable measures to protect California Subclass members' PII.

132.    Businesses that own or license computerized data that includes personal information are required to notify California residents when their PII has been acquired (or has reasonably believed to have been acquired) by unauthorized persons in a data security breach "in the most expedient time possible and without unreasonable delay." Cal. Civ. Code § 1798.82. Among other requirements, the security breach notification must include "the types of personal information that were or are reasonably believed to have been the subject of the breach." Cal. Civ. Code § 1798.82.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

133.    Defendants are businesses that own or license computerized data that includes personal information as defined by Cal. Civ. Code § 1798.82.

134.    Plaintiff's and California Subclass Members' PII includes personal information identified in Cal. Civ. Code § 1798.82(h) such as their names, Social Security numbers, address, and banking and financial account information (including masked bank account numbers), and is thereby covered by Cal. Civ. Code § 1798.82.

135.    Plaintiff and the California Subclass Members are "customers" within the meaning of Cal. Civ. Code § 1798.80(c), as their personal information was provided to Defendants for the purpose of utilizing Defendants' cryptocurrency services.

136.    The Data Breach constituted a breach of Defendants' security systems, networks, and servers.

137.    Because Defendants reasonably believed that Plaintiff and California Subclass Members' PII was acquired by unauthorized persons during the Data Breach, Defendants had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Cal. Civ. Code § 1798.82.

138.    Defendants unreasonably delayed informing Plaintiff and the California Subclass Members about the breach of security of their PII after they knew the breach had occurred.

139.    Upon information and belief, no law enforcement agency instructed Defendants that notification to California Subclass Members would impede an investigation.

140.    Thus, by failing to disclose the Data Breach in a timely and accurate manner, the Defendants also violated Cal. Civ. Code § 1798.82.

141.    Pursuant to Cal. Civ. Code § 1798.84, "[a]ny waiver of a provision of this title is contrary to public policy and is void and unenforceable," "[a]ny customer injured by a violation of this title may institute a civil action to recover damages," and "[a]ny business that violates, proposed to violate, or has violated this title may be enjoined."

142.    As a direct and proximate result of Defendants' violations of Cal. Civ. Code §§ 1798.81.5 and 1798.82, Plaintiff and California Subclass Members were (and continue to be) injured and suffered (and will continue to suffer) damages, as described above.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

143.     Plaintiff and California Subclass Members seek relief under Cal. Civ. Code § 1798.84, including, but not limited to, actual damages, any applicable statutory damages, and equitable and injunctive relief.

## SIXTH CAUSE OF ACTION
### Violation of the California Consumer Privacy Act of 2018
### Civ. Code § 1798.100 *et seq.* ("CCPA")
### *(On Behalf of Plaintiff and the California Subclass)*

144.     Plaintiff, individually and on behalf of the California Subclass, incorporates the above allegations as if fully set forth herein.

145.     Section 1798.150(a)(1) of the CCPA provides, "[a]ny consumer whose nonencrypted or nonredacted personal information, as defined by [Civil Code section 1798.81.5(d)(1)(A)] . . . is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for" statutory or actual damages, injunctive or declaratory relief, and any other relief the court deems proper.

146.     Plaintiff is a consumer and California resident as defined by Civil Code section 1798.140(i).

147.     Defendants are a "business" as defined by Civil Code section 1798.140(d)(2) because they share common branding and control entities that are "organized or operated for the profit or financial benefit of its shareholders or other owners, that collect[] consumers' personal information, or on the behalf of which such information is collected and that alone, or jointly with others, determine[] the purposes and means of the processing of consumers' personal information, that do[] business in the state of California."

148.     Plaintiff's and Class Members' personal information, as defined by Civil Code section 1798.140(v)(1), was subject to unauthorized access and exfiltration, theft, or disclosure. The Data Breach described herein exposed, without limitation, masked Social Security numbers, dates of birth, addresses, phone numbers, emails, photo identification, masked bank account numbers, bank account identifiers, account data, and limited corporate data.

149.    Defendants maintained Plaintiff's and Class Members' PII in a form that allowed criminals to access it.

150.    The Data Breach occurred as a result of Defendants' failure to implement and maintain reasonable security procedures and practices for protecting the exposed information given its nature. Defendants failed to monitor its systems to identify suspicious activity and allowed unauthorized access to Plaintiff's and Class Members' PII.

151.    Consistent with Civil Code Section 1798.150(b), Plaintiff provided written notice to Defendants identifying the CCPA provisions that Defendants violated, and that Defendants have 30 days to cure those violations. Plaintiff provided written notice to Defendants of specific violations of § 1798.150(a) by certified mail dated June 6, 2025.

152.    On behalf of Class Members, Plaintiff presently seeks actual pecuniary damages and injunctive relief in the form of an order enjoining Defendants from continuing to violate the CCPA. Unless and until Defendants are restrained by order of the Court, their wrongful conduct will continue to cause irreparable injury to Plaintiff and the Class.

153.    If Defendants fail to timely rectify or otherwise cure the CCPA violations described herein, individually and on behalf of the Class, Plaintiff reserves his right to amend this Class Action Complaint to seek statutory damages and any other relief the Court deems proper as a result of Defendants' CCPA violations pursuant to Cal. Civ. Code § 1798.150(a).

**SEVENTH CAUSE OF ACTION**
**Violation of the Unfair Competition Law**
**Bus. & Prof. Code § 17200 et seq. ("UCL")**
***(On Behalf of Plaintiff and the California Subclass)***

154.    Plaintiff, individually and on behalf of the California Subclass, incorporates the above allegations as if fully set forth herein.

155.    The UCL proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

156.    Defendants' conduct also is unfair and deceptive in violation of the UCL. Defendants' unfair and fraudulent business acts and practices include:

a.    Failing to adequately secure the personal information of Plaintiff and Class Members from disclosure to unauthorized third parties or for improper purposes;

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

b.  Enabling the disclosure of personal and sensitive facts about Plaintiff and Class Members in a manner highly offensive to a reasonable person;

c.  Enabling the disclosure of personal and sensitive facts about Plaintiff and Class Members without their informed, voluntary, affirmative, and clear consent;

d.  Omitting, suppressing, and concealing the material fact that Defendants did not reasonably or adequately secure Plaintiff's and Class Members' personal information.

157.    Defendants' omissions were material because they were likely to deceive reasonable consumers about the adequacy of its data security and ability to protect the confidentiality of Plaintiff's and Class Members' personal information.

158.    The gravity of harm resulting from Defendants' unfair conduct outweighs any potential utility. The failure to adequately safeguard personal, sensitive information harms the public at large and is part of a common and uniform course of wrongful conduct.

159.    The harm from Defendants' conduct was not reasonably avoidable by consumers. Plaintiff and Class Members were required to provide their PII to support the information system to buy, sell, and trade cryptocurrency. Plaintiff and Class members did not know of, and had no reasonable means of discovering, that their information would be exposed to hackers through in adequate data security measures.

160.    There were reasonably available alternatives that would have furthered Defendants' business interests of electronically transferring their customers' information while protecting PII.

161.    A reasonable person would regard Defendants' derelict data security and the Data Breach as important, material facts that could and should have been disclosed.

162.    As a direct and proximate result of Defendants' unfair methods of competition and unfair or deceptive acts or practices, Plaintiff lost money or property because his sensitive personal information experienced a diminution of value and because he devoted additional time to monitoring his financial accounts for fraudulent activity.

163.    Plaintiff and Class Members therefore seek all monetary and non-monetary relief permitted by law, including actual damages, treble damages, injunctive relief, civil penalties, and attorneys' fees and costs under Code of Civil Procedure section 1021.5.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of themselves and the Class set forth herein, respectfully requests the following relief:

A.    Certifying this action as a class action under Fed. R. Civ. P. 23 and appointing Plaintiff and their counsel to represent the Class;

B.    Entering judgment for Plaintiff and the Class;

C.    Granting permanent and appropriate injunctive relief to prohibit Defendants from continuing to engage in the unlawful acts, omissions, and practices described herein and directing Defendants to adequately safeguard the PII of Plaintiff and the Class by implementing improved security controls;

D.    Awarding compensatory, consequential, and general damages, including nominal damages as appropriate, as allowed by law in an amount to be determined at trial;

E.    Award Plaintiff and Class Members statutory or punitive damages and penalties as allowed by law in an amount to be determined at trial;

F.    Ordering disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendants as a result of Defendants' unlawful acts, omissions, and practices;

G.    Awarding to Plaintiff and Class Members the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

H.    Awarding pre- and post-judgment interest at the maximum legal rate and all such other relief as it deems just and proper; and

I.    Granting such further and other relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims so triable.

1    Dated: June 6, 2025

**SCHUBERT JONCKHEER & KOLBE LLP**

2

3    */s/ Amber L. Schubert*
     Amber L. Schubert

4

5    Robert C. Schubert (S.B.N. 62684)
     Dustin L. Schubert (S.B.N. 254876)

6    Amber L. Schubert (S.B.N. 278696)
     **SCHUBERT JONCKHEER & KOLBE LLP**

7    2001 Union St., Suite 200
     San Francisco, California 94123

8    Telephone:    (415) 788-4220
     Facsimile:    (415) 788-0161

9    E-mail:    rschubert@sjk.law

10                dschubert@sjk.law
                  aschubert@sjk.law

11
     *Counsel for Plaintiff Giovanni Carmassi and the*

12   *Putative Class*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220